# IN THE COURT OF APPEALS OF IOWA

No. 16-1579
Filed November 8, 2017


**DEAN R. LINDFLOTT,**
**SHIRLEY M. LINDFLOTT,**
**RICHARD A. LINDFLOTT, and**
**ROBERT D. LINDFLOTT,**
        Plaintiffs-Appellants,

**vs.**

**DRAINAGE DISTRICT NO. 23,**
**WORTH COUNTY, IOWA, and**
**WORTH COUNTY BOARD OF SUPERVISORS,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Worth County, Christopher C. Foy,

Judge.


        Landowners appeal the district court decision affirming annexation of their

land into a drainage district.  **AFFIRMED.**



        James L. Pray and Benjamin R. Merrill of Brown, Winick, Graves, Gross,

Baskerville, & Schoenebaum, P.L.C., Des Moines, for appellants.

        Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellee.


        Heard by Vogel, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

The Lindflotts appeal the district court's decision affirming annexation of their land into a drainage district. We find the Lindflott land receives a material benefit from the drainage district, and accordingly the annexation of the land was proper. We affirm the district court.

## I. Background Facts and Proceedings

Drainage District Number 23, Worth County, Iowa (District 23), was created in 1916 and drains roughly 7800 acres. The portion of the Lindflotts' property at issue was not included in any drainage district, although it does border five different districts. A meandering natural stream (the Stream) flowed north to south through the Lindflotts' property, entering the property through Drainage District Number 7 (District 7) and discharging into District 23. In 1916, a plan was prepared for straightening and excavating 6.8 miles of the Stream to increase drainage, and work was completed on a 5.2 mile section. In the 1950's the work was continued by private landowners and the excavation ended near the south edge of the Lindflott property. In 1957, District 7 excavated and straightened the Stream north of the Lindflott property, increasing the flow of water into the unimproved portion of the Stream on the Lindflott property.

The Lindflotts bought the property at issue in 1974. In 1975, they had the portion of the Stream on their land straightened and deepened to enable row crops to be more efficiently planted. The Stream now entered the Lindflott property from District 7, flowed as a straight, open ditch through the property instead of as a shallow meandering stream, and exited into District 23. The

portion of the Stream on the Lindflott property matched the depth of the excavated ditch of District 23

In October 2013, Dean Lindflott petitioned the Worth County Board of Supervisors (Board) for repairs to a ditch near his property in Worth County, Iowa. There was some confusion as to exactly which ditch was to be repaired. Dean claims he intended to have a ditch beginning on the western edge of the property, an area covered by Drainage District Number 8 (District 8), cleaned, but a clerk in the auditor's office erroneously identified the district as District 23 instead. The Board appointed Bolton & Menk, Inc., an engineering firm, to investigate the proposed repairs. The investigation was completed and a report presented to the Board on May 9, 2014, with an amendment filed May 28. During the survey, the engineer was unaware the Lindflott property was not in any drainage district. Only after filing the report was the error discovered and the amendment filed describing the benefits imparted to the Lindflott land. The amended report recommended annexing the Lindflotts' property between District 8 and District 23. The Lindflotts resisted the annexation claiming, in part, their land received no material benefit from the drainage district.

The Board approved the motion to annex the Lindflotts' property. The Lindflotts appealed to the district court. A trial was held and the district court affirmed the annexation on August 22, 2016. The Lindflotts now appeal.

## II. Standard of Review

Cases tried in equity are reviewed de novo. *Commercial Sav. Bank v. Hawkeye Fed. Sav. Bank*, 592 N.W.2d 321, 326 (Iowa 1999). The district court reviews the Board's decision in equity, in an appellate capacity, and therefore,

the district court's review was also de novo. Iowa R. App. P. 6.907. We give weight to the trial court's factual findings but are not bound by them. Iowa R. App. P. 6.904(3)(g).

> When reviewing drainage proceedings of boards of supervisors we have applied three principles: the drainage statutes shall be liberally construed for the public benefit; strict compliance with statutory provisions is required to establish a drainage district, while substantial compliance is sufficient as to repairs or improvements; and the procedural requirements should not be too technically construed.

*Hicks v. Franklin Cty. Auditor*, 514 N.W.2d 431, 435 (Iowa 1994).

### III. Material Benefit

The Lindflotts claim the district court improperly found they received a material benefit from District 23. After the formation of a drainage district "if the board becomes convinced that additional lands contiguous to the district" are benefited by the improvements made by the district or would be benefited by repairs or improvements to the district, the board of supervisors may annex those lands into the drainage district. Iowa Code § 468.119 (2013). A qualified engineer is required "to examine such additional lands, to make a survey and plat thereof showing their relation, elevation, and condition of drainage . . . specify the character of the benefits received" and deliver this information in a report to the board. *Id.*

If the engineer's "report recommends the annexation of the lands or any portion of them, the board shall consider the report, plats, and profiles and if satisfied that any of the lands are materially benefited by the district and that annexation is feasible, expedient, and for the public good, it shall proceed [ in the

process of annexation]." *Id.* § 468.120. "Those parties having an interests in the lands proposed to be annexed have the right . . . to take appeals and to do all other things to the same extent and in the same manner as provided in the establishment of an original district." *Id.* The Lindflotts claim the engineer's report fails to properly articulate a material benefit to base the annexation on. While the engineer's report in this case does not fully establish a material benefit to the property, it does substantially comply with the requirements, and it "should not be too technically construed." *See Hicks*, 514 N.W.2d at 435.

The district court held:

> The record before the Court shows that the Lindflott land has benefitted from the open ditch in [District 23]. The drainage of surface water provided by the open ditch enabled the Lindflotts to straighten and excavate [the Stream] across their land, freeing up more of their land for row crops. By straightening and excavating the natural waterway across their land, the Lindflotts were also able to improve the drainage of surface water from their own land and to speed up the passage of water emptied on their land from the outlet of [District 7] thereby increasing the productivity of the land. Granted, the Lindflotts could have straightened and deepened [the Stream] across their land regardless of whether the open ditch in [District 23] existed or not; however, the improvement in drainage resulting from this project would have been much less without the open ditch to carry water away from their land.
> . . . .
> When the Lindflotts straightened and excavated [the Stream] in 1975, they saw fit to match the outlet of their newly constructed channel with what was then the north end of the open ditch maintained by [District 23]. The Court views this conduct as an implicit acknowledgement by the Lindflotts that their land benefited from [District 23]. The fact that the open ditch maintained by [District 23] enables the surface water from the Lindflott land to drain more efficiently constitutes a material benefit to the land and is sufficient to support its annexation into [District 23] under Iowa Code Sections 468.119 and 468.120.

The district court did not note any other material benefit to the land in its opinion.

In order to find a material benefit:

By the language of the statute the land to be included in the district must in some way be affected by the improvement, and, to benefit it, necessarily this must increase its value, either by relieving it of some burden, or by making it adapted for a different purpose, or better adapted for the purpose for which it is used.

*Zinser v. Bd. of Sup'rs of Buena Vista Cty.*, 114 N.W. 51, 56 (Iowa 1907).

However, our case law is clear:

A landowner is [not] under some continuing obligation to "pay the freight" upon his own surface waters after they have left his lands and until they reach an ultimate outlet. No such obligation exists. On the contrary, he may freely avail himself of the topography of his land, and may discharge his surface waters wherever gravitation naturally carries them, without further concern on his part as to where they go, for they are no longer his.

*Thompson v. Bd. of Sup'rs of Buena Vista Cty.*, 206 N.W. 624, 626–27 (Iowa 1925).

Therefore, when the topography of land would ensure surface waters drained off the landowner's property naturally, a landowner must receive some benefit other than an outlet for surface waters to have a material benefit.

**Straightening of the Waterway**

The Lindflotts claim the district court should not have relied on the straightening and excavating of the Stream to show a material benefit. In the 1950's, private land owners in District 23 improved the Stream, excavating to a depth of seven feet below ground level up to the south end of the Lindflott property. In 1975, the Lindflotts excavated the unimproved portion of the Stream to a similar depth. The appellees' claim alleges the Lindflotts would not have been able to excavate the Stream to such a depth had District 23 not excavated the Stream immediately south of the Lindflotts' property. Had the private landowners in District 23 not excavated, the Stream's bed at the border of District

23 would have been only three or four feet below the surface instead of seven feet, and therefore the Lindflotts would not have been able to excavate to a depth of seven feet.

The Lindflotts counter by claiming their work in 1975 was merely to straighten the Stream. However, the Stream was also deepened to seven feet during the work to straighten its course. This could not have been achieved with the same results if the Stream inside District 23 had not been improved. We find the Lindflotts received a material benefit in the form of their ability to deepen the Stream, and continue to receive a benefit in the form of increased drainage for their property. Had the Lindflotts not improved their portion of the Stream, or had the Lindflotts only straightened the Stream without deepening it, it is likely no material benefit could be found. The Lindflotts chose to use District 23's improvements in order to create an improvement of their own, which would have been impossible without the district.

However, the excavation of the portion of the Stream within District 23 was done by private landowners. There is no evidence in the record showing the private landowners were reimbursed for this work or compensated in any way. The Lindflotts claim if any benefit is received, and we have found a benefit is received, it is received from the work of the private landowners' improvement to the Stream and not from District 23. But, District 23 is the improvements to drainage. In essence District 23 is the open ditches, tiles, and other drainage systems within the designated area. Because District 23 is the improvement to the Stream, regardless of who created the improvement, and District 23

maintains the improvement, including a clean out of the Stream in 1976, the Lindflotts have and continue to receive a material benefit from the district.

Finally, Richard Lindflott testified there were improvements, specifically washouts on the banks of the Stream and trees and brush along the banks, which would enhance drainage and reduce sediment in the Stream. District 23 would be able to complete, monitor, and maintain these improvements. Therefore, annexation of their property to the district is equitable. Because we have found annexation proper on this ground, we need not address the Lindflotts' other claims. We affirm the district court.

**AFFIRMED.**